IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNA PERRY                          :        CIVIL ACTION
                                     :
            v.                       :
                                     :
H&R BLOCK EASTERN                    :
ENTERPRISES, INC.                    :        NO. 04-6108


MEMORANDUM

McLaughlin, J.                                    August 18, 2009


       Donna Perry sued H&R Block Eastern Enterprises, Inc.,
for sex and age discrimination, slander, and tortious
interference with contract.  H&R Block brought a counterclaim for
breach of contract based on Ms. Perry's alleged violation of a
non-compete provision in her employment agreement, as well as
various related claims.

       The Court granted summary judgment to H&R Block on some
of Ms. Perry's claims but denied it with respect to the slander
claim.  The Court granted summary judgment to H&R Block on its
counterclaim for violation of the non-compete clause.  The Court
then presided over a jury trial on the slander claim.  The jury
returned a verdict for H&R Block.  The Court conducted a bench
trial concerning the damages to be awarded to H&R Block on its
breach of contract claim.  This memorandum opinion constitutes
the Court's decision on that bench trial.[1]

_____

       [1] Although Ms. Perry had counsel throughout the litigation
and through the bench trial, she is now pro se.

I.    Evidence of Damages

      H&R Block's damages calculation relies on a damages provision in the relevant contract.  The contract states that an employee who breaches the non-compete clause

> shall pay to [the] Company an amount equal to two times the Average Fee charged by [the employee] during the term of this Agreement multiplied by the number of Non-Returning Company Clients  multiplied by [the employee]'s Baseline Client Retention Percentage as defined in Section 5 . . . .

See Employment Agreement ¶ 14(b), 8/14/07 Hrg. Ex. D-15 ("Empl. Ag.").  H&R Block contends that this calculation results in damages of $46,784.33.

      During the bench trial, a representative of H&R Block explained how the formula worked and whence the numbers related to Ms. Perry came.  A second witness, who was a paralegal at defense counsel's firm, testified that he had taken a list of Ms. Perry's customers at H&R Block and compared the names on that list with those on a list of individuals at Jackson Hewitt for whom she had also prepared tax returns.  H&R Block is seeking damages for all H&R Block customers for whom Ms. Perry prepared tax returns while at H&R Block who had their tax returns prepared at Jackson Hewitt.

      During cross-examination of the H&R Block representative, it became clear that under the formula, H&R Block

would recover more than its actual damages, as it did not deduct from the formula amount any commissions that would have been paid to the tax preparer who prepared the customers' tax returns had the customers stayed with H&R Block instead of going to Jackson Hewitt.  See 8/14/07 Tr. at 29-36, 39.

     Prior to the bench trial, neither the plaintiff nor her counsel had been able to view the Jackson Hewitt documents that formed the basis of H&R Block's damages because they had not yet signed a confidentiality agreement.  On November 27, 2007, the Court issued an order stating that the plaintiff could see the list of clients for whom Ms. Perry did tax returns at Jackson Hewitt when Ms. Perry and her counsel sign a confidentiality order agreeing not to disclose any of this information.  See Docket Nos. 109, 110; see also 4/25/08 Tr. at 3 (Docket No. 117). Counsel for the plaintiff was then permitted to withdraw with the consent of the plaintiff and with the understanding that the plaintiff would handle the remainder of the damages issue herself.  See Docket No. 112.

     After the plaintiff's counsel was permitted to withdraw, the Court received a number of correspondences from Ms. Perry and from defense counsel regarding difficulties they were having getting Ms. Perry to view the relevant documents.  To facilitate this matter, the Court decided to hold a status conference, to which defense counsel was ordered to bring all

-3-

documents relied on to support the defendants' damages calculations.  The Court held a status conference on April 25, 2008, at which the defendant appeared through counsel and Ms. Perry and her husband appeared without counsel.  At the conference, defense counsel explained to the Court and to Ms. Perry the nature of the documents that were available and how the defendant had used those documents in preparing the damages calculation.[2]

During the conference, defense counsel stated that as long as a customer was an H&R Block customer whose tax returns Ms. Perry prepared while at H&R Block, who then went to Jackson Hewitt, defense counsel added the name of that customer to the list to be used to calculate damages even if Ms. Perry had not prepared the tax return at Jackson Hewitt.  The Court, upon Ms. Perry's objection, stated that it would exclude from H&R Block's damages customers whose tax returns Ms. Perry did not prepare at Jackson Hewitt.  It also instructed counsel for H&R Block to provide to the Court a list excluding those customers whose tax returns Ms. Perry did not prepare at Jackson Hewitt.  4/25/08 Tr. at 13, 15, 19-20.

Subsequent to the April 25, 2008, conference, the Court did not receive from the defendant a damages calculation that

---

[2] Defense counsel also agreed that Ms. Perry could review these documents at defense counsel's law firm.

excluded individuals whose tax returns Ms. Perry had not prepared
at Jackson Hewitt.  On October 23, 2008, the Court issued an
Order requiring H&R Block to submit to the Court on or before
November 7, 2008, its damage calculation for only those people
who left H&R Block for Jackson Hewitt whose taxes Ms. Perry
prepared.  See Docket No. 120.

          In addition, at some point after the April 25, 2008,
conference, Mr. and Mrs. Perry reviewed the customer lists in
defense counsel's possession.  On October 28, 2008, Ms. Perry
submitted a letter, which the Court received on October 31, 2008.
In this letter, Ms. Perry identified eighty-three customers on
the H&R Block list for whom she believed she should not be
charged for a number of reasons, including that the returns were
not prepared by her either at H&R Block or Jackson Hewitt.  See
Letter from Donna Perry to Hon. Mary A. McLaughlin (Oct. 28,
2008), attached to Docket No. 124.

          On November 5, 2008, H&R Block filed a memorandum
explaining its damages calculation.  See Docket No. 121.  It now
appears that at the time that H&R Block submitted that
memorandum, it had not received a copy of Ms. Perry's letter
dated October 28, 2008.  Regardless, the memorandum merely
repeated the position taken by defense counsel at the April 25,
2008, hearing regarding the amount of damages under the formula;
it did not, however, take account of the fact that at the status

-5-

conference on April 25, 2008, defense counsel said that H&R Block would present to the Court a number that excluded those customers whose tax returns Ms. Perry did not prepare at Jackson Hewitt.

On January 29, 2009, H&R Block filed a response to Ms. Perry's letter of October 28, 2008, which they had received in January, 2009.  See Docket No. 125.  In this filing, H&R Block reiterated the position on damages it had taken in its November 5, 2009, memorandum.  The Court received a response from Ms. Perry on February 23, 2009.  Ms. Perry responded to various statements of fact in H&R Block's filing and attached a list of clients for which she contends she should not be charged.[3]

On March 2, 2009, H&R Block filed an objection to and a motion to strike Ms. Perry's February 23, 2009, filing on the basis that it is too late for Ms. Perry to challenge the evidence presented at the bench trial and to submit further evidence to the Court.  See Docket No. 127.  Ms. Perry opposed the motion to strike on March 9, 2009, arguing that her expectation was that at some point she would be allowed to view the documents that supported the damages calculation.  She argues that now that she has seen the lists of customers relied on by H&R Block, she should be permitted to make objections.

---

[3] Attached to this filing as "Exhibit A" was a certification from Ms. Perry that her statements regarding the list of clients she had reviewed were true, correct, and accurate.

II.  <u>Legal Standards</u>

H&R Block contends that, under Pennsylvania's choice of law rules, Missouri law governs the calculation of damages under Ms. Perry's employment agreement.  It argues, however, that the restrictive covenants at issue are enforceable under the law of either Missouri or Pennsylvania.[4]  H&R Block's memorandum concerning its damages calculation therefore cites to cases applying both Missouri and Pennsylvania law.

The Court has reviewed the relevant case law from both jurisdictions, which it will herein review.  However, because the Court determines that the same result obtains under the law of either jurisdiction, it need not resolve the choice of law question.  See <u>Hammersmith v. TIG Ins. Co.</u>, 480 F.3d 220, 229 & n.6 (3d Cir. 2007).


A.  <u>Pennsylvania Law</u>

Under Pennsylvania law, the parties to a contract may include a liquidated damages provision which ensures recovery in cases where the computation of actual damages would be speculative.  <u>Brinich v. Jencka</u>, 757 A.2d 388, 401-02 (Pa. Super. Ct. 2000) (quoting <u>Carlos R. Leffler, Inc. v. Hutter</u>, 696 A.2d 157, 172 (Pa. Super. Ct. 1997)).  Liquidated damages clauses are enforceable provided that, at the time the parties enter into the

---

[4] Earlier in this litigation, Ms. Perry argued that the employment agreement was not a valid contract, and that Pennsylvania law should apply to the present dispute.

-7-

contract, the sum agreed to constitutes a reasonable approximation of the expected loss rather than an unlawful penalty. Id. at 402; see also Finkle v. Gulf & Western Mfg. Co., 744 F.2d 1015, 1021 (3d Cir. 1984); cf. Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002). On the other hand, a provision that calls for payment of a sum on non-performance or on default that is disproportionate to the value of the performance promised or the injury that has actually occurred will be deemed a penalty. Robins Motor Trans., Inc. v. Assoc. Rigging & Hauling Corp., 944 F. Supp. 409, 411 (E.D. Pa. 1996) (citing Finkle, 744 F.2d at 1021).

To determine whether the stipulated damages amount is a reasonable, valid liquidated damages provision or a penalty, a court should look to the intention of the parties, drawn from the words of the whole contract, examined in light of its subject-matter and its surroundings. Geisinger Clinic v. Di Cuccio, 606 A.2d 509, 517 (Pa. Super. Ct. 1992). In making this determination, the court must "consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the . . . breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction." Brinich, 757 A.2d at 402 (quoting Hanrahan, 614

A.2d at 750) (internal quotation marks omitted)); Geisinger, 606 A.2d at 517.[5]


    B.   Missouri Law

       Missouri has adopted the Restatement Second of Contracts.  Valentine's, Inc. v. Ngo, 251 S.W.3d 352, 354 (Mo. Ct. App. 2008); Paragon Group, Inc. v. Ampleman, 878 S.W.2d 878, 881 (Mo. Ct. App. 1994).  The general rule is that liquidated damages clauses are valid and enforceable, while penalty clauses are invalid.  Ngo, 251 S.W.3d at 354.  To be valid, the damages called for by a liquidated damages clause must be reasonable in light of anticipated or actual loss caused by the breach and the difficulties of proof of loss.  On the other hand, a term fixing unreasonably large liquidated damages is deemed a penalty and is unenforceable as a matter of public policy.  Id.

       For a liquidated damages clause to be valid, (1) the amount fixed as damages must be a reasonable forecast for the harm caused by the breach; and (2) the harm must be of a kind difficult to estimate.  Id.  To be a reasonable forecast of damages, the amount must not be unreasonably disproportionate to the amount of harm anticipated when the contract was made.

---

    [5] The Geisinger court provided four criteria to help differentiate a liquidated damages provision from a penalty in a restrictive covenant clause of an employment agreement. Geisinger, 606 A.2d at 517 (quoting Stover v. Spielman, 1 Pa. Super. 526, 530-31 (1896)).  The Court concludes that these criteria do not, in this case, add anything further to the general analysis prescribed by Geisinger and Brinich.

Paragon, 878 S.W.2d at 881.  Where the difficulty of proving loss is great, parties have significant latitude in setting the amount of anticipated damages.  Ngo, 251 S.W.3d at 355.

III. Discussion

Ms. Perry has challenged the damages provision of the contract as unenforceable because it results in H&R Block receiving more than its actual damages.  The Court has reviewed this claim carefully and declines to enforce the provision.

As a preliminary matter, even were the Court to conclude that the formula utilized in H&R Block's damages calculation is a reasonable approximation of anticipated or actual damages, it is without sufficient evidence to apply that formula reliably in this case.  Ms. Perry has challenged the number of individuals for whom she should be held accountable under the formula, and the Court has approved a reduction in the number of customers for whom Ms. Perry should be held responsible, to the extent that any was not a client of Ms. Perry's at Jackson Hewitt.  Defense counsel has admitted that the list provided to the Court contains customers whose tax returns Ms. Perry did not prepare.

The Court does not see how it could possibly do what H&R Block suggests - that is, ignore Ms. Perry's contentions concerning the customers on the H&R Block's list when she did not have an opportunity to view those lists before the trial.  The

-10-

Court understands that Ms. Perry's counsel could have pursued
getting access to the documents with the Court before trial.
Nevertheless, given the history of this litigation, the Court is
reluctant to ignore evidence that Ms. Perry could not have
presented at the time of trial.

        In addition, counsel for H&R Block at the April 25,
2008, conference told the Court that there were customers on the
list whose tax returns were not prepared by Ms. Perry at Jackson
Hewitt.  The Court ruled at that time that the Court would not
award damages to H&R Block for such customers.  The Court also
instructed defense counsel at the conference to provide a list to
the Court excluding such customers.  Approximately six months
later, having received no such list, the Court ordered H&R Block
to provide a number for damages that excluded those customers.

        The Court has not, to date, seen any such number.
Instead, all of H&R Block's filings after the Court's order of
October 23, 2008, appear to utilize the list of customers that
did not exclude the customers whom the Court ruled it would
exclude.  H&R Block has not shown, nor has it argued, that such a
list would be difficult to generate, or that it would be
difficult to provide a damages calculation utilizing such a list.
Indeed, defense counsel stated at the April 25, 2008, conference
that she believed that she already had a list excluding the
customers whose tax returns Ms. Perry did not prepare at Jackson
Hewitt.  See 4/25/08 Tr. at 15.

Nor has H&R Block come to grips with the evidence that Ms. Perry has presented in her filings since the April 25, 2008, conference.  The Court understands that H&R Block currently does not have the ability to cross-examine Ms. Perry.  However, it does have access to documents and it has the ability to refute Ms. Perry's evidence if it cares to do so.  H&R Block was ready for trial on this matter months and months ago.  The Court assumes that, at that time, it was prepared to justify all of the customers on the list it provided to the Court.

Even if the Court were simply to reduce the number of customers for whom Ms. Perry should be held responsible by the number she has suggested, the Court has further concerns about whether the formula represents a reasonable approximation of H&R Block's expected loss.  For example, H&R Block's witnesses have admitted that the damages formula does not take out commissions received by tax preparers.  8/14/07 Tr. at 18-20, 29-36.  Without such a number taken into account, the reasonableness of the number used by the formula for the employee's average charge is called into question.  It has not been shown that this number - or some reasonable approximation thereof - is or would be difficult to calculate, at the very least in this case, where Ms. Perry was not a new employee.  Finally, although the Court does not conclude that H&R Block's formula is necessarily void as an unenforceable penalty clause, it is not persuaded that, in

-12-

circumstances such as these, H&R Block's actual damages would necessarily be speculative or difficult to estimate.

For these reasons, and in view of Ms. Perry's evidence in opposition to damages, the Court cannot conclude that the damages provision of Ms. Perry's employment agreement is or was a reasonable approximation of H&R Block's anticipated or actual loss.  The Court will not enforce the provision against Ms. Perry.  In the absence of further evidence of H&R Block's actual damages to a reasonable degree of certainty, the Court will instead award H&R Block nominal damages of one dollar.[6]  The Court expresses no opinion as to whether and to what extent Ms. Perry is responsible for H&R Block's costs and attorneys' fees.[7]

An appropriate Order shall issue separately.

---

[6] Under both Pennsylvania and Missouri law, the amount of lost profits resulting from breach of contract generally must be established with reasonable certainty.  Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54-55 (Mo. 2005); Jahanshahi v. Centura Dev. Co., 816 A.2d 1179, 1184 (Pa. Super. Ct. 2003).  Nevertheless, a breach of contract entitles the injured party at least to nominal damages.  Gee v. Payne, 939 S.W.2d 383, 387 (Mo. Ct. App. 1997); Scobell, Inc. v. Schade, 688 A.2d 715, 719 (Pa. Super. Ct. 1997).

[7] H&R Block has filed a motion for attorneys' fees.  See Docket No. 128.  The Court will deny this motion without prejudice, in view of the ruling herein on damages, so that H&R Block may have an opportunity to discuss whether and to what extent Ms. Perry can be held accountable for its costs and attorneys' fees based on the Court's award of nominal damages. H&R Block need not formally re-file its motion for attorneys' fees or reproduce the analysis contained therein; rather, it shall submit a supplemental brief only on these issues.  In deciding the issues, the Court will take into account the arguments and analysis contained in H&R Block's motion for attorneys' fees.  After H&R Block files its supplemental brief, Ms. Perry shall then have an opportunity to file a response.